IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DICK ANDERSON CONSTRUCTION, INC., | ) | |
| A Montana Corporation, | ) | Case No.: |
| | ) | |
|       Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CARMODY CRANE, LLC, a Missouri | ) | JURY TRIAL DEMANDED |
| limited liability company, | ) | |
| | ) | |
|       Defendants. | ) | |

## COMPLAINT

COMES NOW the plaintiff, DICK ANDERSON CONSTRUCTION, INC. ("DAC"), by and through its undersigned attorney, and by way of Complaint against defendant CARMODY CRANE, LLC ("Carmody Crane"), alleges and avers as follows:

### I.   Parties, Jurisdiction, and Venue

1.      DAC is a duly licensed and registered corporation in the State of Montana, with its principal place of business in Lewis and Clark County, State of Montana.  DAC has paid all fees and satisfied all conditions necessary to maintain this action.

2.      Carmody Crane is a Missouri limited liability company engaged in the business of buying and selling mobile crane equipment and other goods throughout the United States. Carmody Crane's principal place of business is in Fenton, Missouri.

3.      This action arises out of the purchase and sale of a 2007 Manitowoc 999 Crane, where Carmody Crane was the seller and DAC was the buyer.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because an actual justiciable controversy exists between the parties, the plaintiff is a citizen of a different state than the defendant, and the amount in controversy exceeds $75,000.

5.      The United States District Court for the Eastern District of Missouri has personal jurisdiction over defendant Carmody Crane because Carmody Crane maintains its principal place of business in Fenton, Missouri, which is located within the judicial district of the Eastern District of Missouri.

6.      The United States District Court for the Eastern District of Missouri is the proper venue for this lawsuit pursuant to 28 U.S.C. § 1391(b) because Carmody Crane maintains its principal place of business in the judicial district of the Eastern District of Missouri and because this Court has personal jurisdiction over Carmody Crane with respect to this action.

## II. Facts

7.      In March 2016, DAC entered into an agreement with Carmody Crane to purchase a 2007 Manitowoc 999 Crane, including a 220 foot main boom, block, and ball for the purchase price of $1,060,875.00.  As part of the sale agreement, Carmody Crane agreed to power wash the equipment, to service the equipment, and to have it inspected by a certified inspector to ensure that all components were functional and in safe working order.

8.      DAC's agreement to purchase the equipment was contingent upon DAC's approval of the inspection of the crane by a certified inspector.  Carmody Crane was responsible for engaging the services of the certified inspector and furnishing the inspection report to DAC.

9.      Carmody Crane furnished DAC with an inspection report dated March 8, 2016, which represented that the crane equipment was inspected and that no deficiencies were noted.

10.     Based on this representation, DAC agreed to proceed with the purchase of the crane equipment.  DAC sent an initial payment of $50,000 to Carmody Crane upon approval of the inspection.   DAC later paid the balance of the purchase price (in the amount of

$1,010,825.00) when the components of the crane equipment were loaded by a freight company for transport to DAC's project site in the State of Montana.

11.    It took approximately one week for all components of the crane to be delivered to DAC's project site in Montana.  The first component of the crane to be delivered to Montana was the house for the crane.  Upon examining the house at the time of delivery, DAC noticed that the house had not been serviced as promised.  The air filter was clogged, the oil was dirty, the fuel and oil gauges did not work properly, in naming just a few of the deficiencies found.

12.    The next components of the crane to arrive were the side frames.   Upon inspection at the time of delivery, the side frames appeared to have no useful life remaining.  Such a condition was not consistent with the inspection report or with a crane that is less than 10 years old.  Furthermore, the side frames suffered from mechanical problems.

13.    The next components of the crane to arrive were the boom parts.  When delivered, the boom parts did not appear to match the crane.  Upon further investigation, DAC discovered that some of the boom sections were from cranes dating back to 1978 (based on the manufacturer's date stamp on the boom sections themselves).

14.    As other components arrived on site, they also exhibited signs that the components were not part of a 2007 Manitowoc 999 Crane.

15.    At the time of delivery, the crane and its components failed to conform to the sale agreement in material respects.  Due to these numerous problems and deficiencies with the components of the equipment that were delivered, DAC determined that it would be unsafe to assemble and erect the crane.  The components of the crane remain at the project site, unassembled and unused.

16.     DAC has been denied the opportunity to use the crane for its operations in Montana.   As a result, DAC has been compelled to rent other equipment to perform its operations, at additional cost to DAC.

### III. Causes of Action
### First Cause of Action:
### Rejection of Non-Conforming Goods and Cancellation of Contract

17.     DAC incorporates the allegations in paragraphs 1-16 of the Complaint and re-alleges them here.

18.     The agreement between DAC and Carmody Crane is an agreement for the sale of goods, governed by the Uniform Commercial Code, as enacted in Montana (*M.C.A. § 30-2-101 et seq.*) and in Missouri (*M.R.S. § 400.2-101 et seq.*).

19.     The goods sold by Carmody Crane under the sale agreement did not conform to the contract, in that the goods were not properly inspected or serviced (as promised), that certain components were defective, and that certain critical components of the goods delivered were not actually components of the 2007 Manitowoc 999 Crane that was promised under the sale agreement (but instead were components from much older cranes that were useless or defective). As a result, Carmody Crane breached the sale agreement.

20.     Because the goods did not conform to the contract, DAC was entitled to reject the goods.   *M.C.A. § 30-2-601(a); M.R.S. § 400.2-601(a).*   Upon learning of the non-conforming goods, DAC timely and seasonably notified Carmody Crane of the non-conforming goods and of DAC's rejection of the goods.

21.     Because Carmody Crane's breach of contract went to the whole contract, DAC is entitled to cancel the contract, to recover the contract price, and to recover costs of "cover" or

4

non-delivery, incidental damages, and consequential damages. *M.C.A. §§ 30-2-711(1) and 30-2-715; M.R.S. §§ 400.2-711(1) and 400.2-715.*

22.     Despite notice of rejection and demand for payment, Carmody Crane has failed to return the contract price, to compensate DAC for its damages, or to remove the non-conforming goods from DAC's project site.

23.     As a direct and proximate result of Carmody Crane's breaches of contract, DAC has been damaged in an amount to be proven at the time of trial, but no less than $1,126,620, plus costs of cover, incidental damages, consequential damages, interest, costs, and attorney's fees.

<u>**Second Cause of Action:**</u><br><u>**Revocation of Acceptance of Non-Conforming Goods and Cancellation of Contract**</u>

24.     DAC incorporates the allegations in paragraphs 1-23 of the Complaint and re-alleges them here.

25.     Because the nonconformities substantially impaired the value of the goods to DAC, to the extent any acceptance may have occurred, DAC was entitled to revoke acceptance and to treat the goods as rightfully rejected. *M.C.A. § 30-2-608; M.R.S. § 400.2-608.* Upon learning of the non-conforming goods, DAC timely and seasonably notified Carmody Crane of the non-conforming goods and of DAC's revocation of acceptance of the goods.

26.     Because Carmody Crane's breach of contract went to the whole contract, DAC is entitled to cancel the contract, to recover the contract price, and to recover costs of "cover" or non-delivery, incidental damages, and consequential damages. *M.C.A. §§ 30-2-711(1) and 30-2-715; M.R.S. §§ 400.2-711(1) and 400.2-715.*

27.     Despite notice of revocation of acceptance and demand for payment, Carmody Crane has failed to return the contract price, to compensate DAC for its damages, or to remove the non-conforming goods from DAC's project site.

28.     As a direct and proximate result of Carmody Crane's breaches of contract, DAC has been damaged in an amount to be proven at the time of trial, but no less than $1,126,620, plus costs of cover, incidental damages, consequential damages, interest, costs, and attorney's fees.

**Third Cause of Action:**
**Fraud and Rescission**

29.     DAC incorporates the allegations in paragraphs 1-28 of the Complaint and re-alleges them here.

30.     As the seller of goods, Carmody Crane contracted with and/or acted through agents: (a) to inspect the crane in order to verify that there were no defects or deficiencies in the crane and that it was functional for its intended purpose; (b) to make representations to DAC, as a material inducement to DAC to purchase the crane, that there were no defects or deficiencies in the crane and that it was functional for its intended purpose; and (c) to deliver the goods in conformance with the contract for sale.

31.     Through its agents, Carmody Crane represented to DAC that a complete inspection of the crane was performed by a certified crane inspector.

32.     Through its agents, Carmody Crane further represented to DAC that the crane to be sold contained no defects and that it was functional for its intended purpose.

33.     Based on these material representations, DAC agreed to purchase the crane from Carmody Crane in exchange for payment of $1,060,875.00.

34.     Through its agents, Carmody Crane represented to DAC that the crane that was delivered to DAC's freight company for shipment was the crane promised in the contract for sale and was the crane that was inspected by the certified inspector.

35.     Based on these material representations, DAC permitted the freight company to load the crane components on trucks for delivery to DAC's project site in Montana, at a cost of $65,746.82 to DAC.

36.     Through its agents, Carmody Crane made false material representations to DAC, including: (a) that the crane (including all components) actually delivered to DAC was inspected by a certified crane inspector; (b) based on this inspection, that the crane (including all components) actually delivered to DAC contained no defects or deficiencies and that it was functional for its intended purpose; and (c) that the crane (including all components) actually delivered to DAC was the crane that was inspected and was in conformance with the contract for sale.

37.     Through its agents, Carmody Crane knew of these false representations and/or was ignorant of their truth.

38.     Carmody intended that DAC should reasonably act upon these false representations by agreeing to purchase the crane, by paying Carmody Crane a price of $1,060,875 for the crane, and by paying a freight company $65,746.82 to ship the crane to DAC's project site in Montana.

39.     At all times, DAC was ignorant of the false representations made by Carmody Crane, through its agents.

40.     DAC was entitled to rely on the truth of the false representations and, in fact, relied on the truth of the false representations when it agreed to purchase the crane, when it paid

7

$1,060,875 to Carmody Crane for the purchase of the crane, and when it paid $65,746.82 to a freight company to ship the crane to DAC's project site in Montana.

41.     As a direct and proximate result of these false representations, DAC has been injured through the payment of the purchase price for defective goods, through the payment of freight costs for nonconforming goods, for the loss of use of the crane in DAC's ongoing operations, for the loss of use of the funds paid for the crane, for the ongoing costs of storage, and for other incidental and consequential damages.

42.     As a result of these false representations, DAC is entitled to rescind the contract for sale and to recover damages in an amount to be proven at the time of trial, but no less than $1,126,620, plus costs of cover, incidental damages, consequential damages, interest, costs, and attorney's fees.

43.     Carmody Crane accepted the benefits of the fraudulent representations and had either actual or constructive knowledge, at the time of the fraud or at the time it accepted the benefits of the fraudulent representations, that fraud had been committed.  As a result, Carmody Crane is liable to DAC for the fraudulent representations.

**Fourth Cause of Action:**
**Negligent Misrepresentation and Rescission**

44.     DAC incorporates the allegations in paragraphs 1-43 of the Complaint and re-alleges them here.

45.     In the course of its business, Carmody Crane supplied material information to DAC concerning the crane to be purchased, including: (a) that the crane (including all components) actually delivered to DAC was inspected by a certified crane inspector; (b) based on this inspection, that the crane (including all components) actually delivered to DAC contained no defects or deficiencies and was functional for its intended purpose; and (c) that the crane

8

(including all components) actually delivered to DAC was the crane that was inspected and was in conformance with the contract for sale.

46.     Because Carmody Crane failed to exercise reasonable care, the material information concerning the crane was false.

47.     The false information was intentionally provided by Carmody Crane to DAC to induce DAC to agree to purchase the crane and to accept delivery of the crane.

48.     DAC justifiably relied upon the information provided by Carmody Crane.  As a result of DAC's reliance on the false information, DAC suffered pecuniary loss.

49.     As a direct and proximate result of these negligent misrepresentations, DAC has been injured through the payment of the purchase price for defective goods, through the payment of freight costs for nonconforming goods, for the loss of use of the crane in its ongoing operations, for the loss of use of the funds paid for the crane, for the ongoing costs of storage, and for other incidental and consequential damages.

50.     As a result of these negligent misrepresentations, DAC is entitled to rescind the contract for sale and to recover damages in an amount to be proven at the time of trial, but no less than $1,126,620, plus costs of cover, incidental damages, consequential damages, interest, costs, and attorney's fees.

51.     Carmody Crane accepted the benefits of the negligent misrepresentations and had either actual or constructive knowledge, at the time of the misrepresentations or at the time it accepted the benefits of the negligent misrepresentations, that misrepresentation had been made. As a result, Carmody Crane is liable to DAC for the negligent misrepresentations.

### Fifth Cause of Action:
### Punitive Damages

52.     DAC incorporates the allegations in paragraphs 1-51 of the Complaint and re-alleges them here.

53.     Carmody Crane's conduct, through its agents, is outrageous because of its evil motive as demonstrated by the fraud/misrepresentation of Carmody Crane's agents and/or the reckless indifference to the rights of DAC as demonstrated by the fraud/misrepresentation of Carmody Crane's agents.

54.     Under Missouri law, punitive damages should be assessed against Carmody Crane to punish and to deter such outrageous conduct.

55.     Carmody Crane, through its agents, had knowledge of facts and/or intentionally disregarded facts that created a high probability of injury to DAC, and Carmody Crane deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to DAC and/or deliberately proceeded to act with indifference to the high probability of injury to DAC.  As a result, Carmody Crane, through its agents, is guilty of actual malice as defined by Montana law.  *M.C.A. § 27-1-221(2).*

56.     Carmody Crane, through its agents, made representations to DAC with knowledge of their falsity and/or concealed material facts with the purpose of depriving DAC of property or legal rights or otherwise causing injury.  DAC had a right to rely upon the representations and suffered injury as a result of such reliance.  As a result, Carmody Crane, through its agents, is guilty of actual fraud as defined by Montana law.  *M.C.A. § 27-1-221(3) and (4).*

57.     Under Montana law, punitive damages should be assessed against Carmody Crane to punish and deter such actual malice and/or actual fraud. *M.C.A. § 27-1-221.*

## Sixth Cause of Action:
### Attorney's Fees

58.     DAC incorporates the allegations in paragraphs 1-57 of the Complaint and re-alleges them here.

59.     Despite demand, Carmody Crane has failed to return the contract price, to compensate DAC for its damages, or to remove the non-conforming goods from DAC's project site.

60.     As a result of these failures, DAC has been compelled to retain counsel to enforce its rights under the agreement and applicable law.

61.     The agreement for the sale of goods contains a right to attorney's fees, which is a reciprocal right under Montana law.  *M.C.A. § 28-3-704.*  Therefore, DAC is entitled to recover its attorney's fees incurred to enforce its rights under the sale agreement.

62.     In addition, equity demands that DAC be reimbursed its attorney's fees due to the outrageous conduct associated with the transaction, including (without limitation): (a) furnishing a false or misleading inspection report as an inducement to DAC to purchase the crane; and (b) engaging in a bait and switch operation, where the components that were delivered were either much older than the 2007 equipment being purchased and/or were from a different crane than was inspected prior to purchase.

## Seventh Cause of Action:
### Breach of Implied Duty of Good Faith and Fair Dealing

63.     DAC incorporates the allegations in paragraphs 1-62 of the Complaint and re-alleges them here.

64.     Pursuant to Missouri Revised Statute § 400.1-203, for every commercial contract there is an obligation of good faith with regard to the performance or enforcement of the contract.

65.     As more particularly described above, in accordance with the  Agreement, Carmody Crane supplied material information to DAC concerning the crane to be purchased, including: (a) that the crane (including all components) actually delivered to DAC was inspected by a certified crane inspector; (b) based on this inspection, that the crane (including all components) actually delivered to DAC contained no defects or deficiencies and was functional for its intended purpose; and (c) that the crane (including all components) actually delivered to DAC was the crane that was inspected and was in conformance with the contract for sale.

65.     The material information furnished to DAC concerning the crane was false as set forth above.

66.     The false information was intentionally provided by Carmody Crane to DAC to induce DAC to agree to purchase the crane and to accept delivery of the crane.

67.     The provision of false and/or misleading information by Carmody Crane to induce DAC to purchase the crane and to accept delivery of the crane is a breach of the duty of good faith and fair dealing set forth in  Missouri Revised Statute § 400.1-203.

68.     As a direct and proximate result of the breach of the duty of good faith and fair dealing, DAC has been injured through the payment of the purchase price for defective goods, through the payment of freight costs for nonconforming goods, for the loss of use of the crane in its ongoing operations, for the loss of use of the funds paid for the crane, for the ongoing costs of storage, and for other incidental and consequential damages.

69.     As a result of breach of the duty of good faith and fair dealing, DAC is entitled to recover damages in an amount to be proven at the time of trial, but no less than $1,126,620, plus costs of cover, incidental damages, consequential damages, interest, costs, and attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, DAC requests that the Court provide relief as follows:

1.      For judgment against Carmody Crane in an amount to be proven at the time of trial, but no less than $1,126,620, plus costs of cover, incidental damages, consequential damages, and interest;

2.      For an award of costs of suit and attorney's fees; and

3.      For such other relief as the Court deems just and equitable.

DATED this ___ day of _____, 20__.

Respectfully Submitted,

**LAW OFFICE OF JOAN M. SWARTZ**


BY:____ /s/ *Joan M. Swartz*_____
          Joan M. Swartz, #37242MO
          8050 Watson Road, Suite 355
          St. Louis, Missouri 63119
          (314) 471-2032 (telephone)
          (314) 270-8103 (facsimile)
          jms@jmsllc.com

**ATTORNEY FOR PLAINTIFF**